PRESENT: All the Justices

ROBERT WEINGARTEN, ET AL.,

                                              OPINION BY
v.  Record No. 012702            JUSTICE DONALD W. LEMONS
                                              June 7, 2002
ALFRED W. GROSS, DEPUTY RECEIVER OF
FIRST DOMINION MUTUAL LIFE INSURANCE COMPANY,
SUCCESSOR TO FIDELITY BANKERS LIFE INSURANCE
COMPANY, AND TRUSTEE OF FIDELITY BANKERS LIFE
INSURANCE COMPANY TRUST, ET AL.

FROM THE STATE CORPORATION COMMISSION

In this appeal of right from a final order of the State Corporation Commission (the "Commission"), we consider whether a claim for mandatory indemnification, pursuant to Code § 13.1-698, is entitled to be paid as "costs and expenses of administration," pursuant to Code § 38.2-1509(B)(1).

I.   Facts and Proceedings Below

The complete history of this case is reported in Gross v. Weingarten, 217 F.3d 208 (4th Cir. 2000).  The facts are not in dispute and we summarize only those facts relevant to this appeal.  On May 13, 1991, the Circuit Court for the City of Richmond entered an order placing Fidelity Bankers Life Insurance Company ("Fidelity Bankers") into receivership and appointing Steven T. Foster ("Foster"), then the Commissioner of Insurance in Virginia, to serve as Deputy Receiver for Fidelity Bankers.

Alfred W. Gross succeeded Foster as Commissioner of Insurance and was appointed Deputy Receiver ("Gross" or "Deputy

Receiver") of Fidelity Bankers.  Gross proposed a Rehabilitation Plan (the "Plan") for Fidelity Bankers and after a nine-day hearing, the Commission approved the Plan and entered a final order on September 29, 1992.  Under the Plan, Hartford Life Insurance Company ("Hartford") would assume and reinsure potentially all the Fidelity Bankers policies.  Those who declined to participate in the Plan received a cash payment of the lesser of either 85% of their account value or the surrender value of their contracts, and to the extent that available assets permitted, a two-year annuity from Fidelity Bankers equal to no more than the remaining 15% of their account value.  Gross, 217 F.3d at 214.  Those who chose to participate were offered a Hartford annuity with an account value equal to their account value as of the "Effective Date."  They would also receive a Plan Dividend, which was intended to compensate them "for loss of interest and liquidity during the seven-year period provided for in th[e] [P]lan."

In December 1992, approximately 19 months after the commencement of the receivership, the Deputy Receiver initiated an action in the United States District Court for the Eastern District of Virginia against Robert I. Weingarten, Gerry R. Ginsberg, and Leonard Gubar (collectively "Directors"), in their capacity as former directors of Fidelity Bankers, alleging, among other things, violations of federal and state securities

2

laws and breach of fiduciary duties. During the pendency of the litigation, the Directors filed counterclaims against the Deputy Receiver. At the close of the evidence during trial, the district court granted judgment as a matter of law in favor of the Directors on the state securities claim and submitted the remaining counts to the jury. On May 21, 1998, the jury returned a verdict in favor of the Directors on the remaining counts, and the district court dismissed the counterclaims for lack of subject matter jurisdiction. Gross v. Weingarten, 18 F.Supp.2d 616 (E.D. Va. 1998).

The Deputy Receiver appealed the adverse jury verdict and the Directors filed a cross-appeal. The United States Court of Appeals for the Fourth Circuit affirmed the jury verdict and reinstated and remanded the counterclaims. Gross v. Weingarten, 217 F.3d at 225.

In November 2000, the Deputy Receiver and the Directors agreed to a settlement of $3.5 million, which represented "certain of the fees and costs incurred" by the Directors in their defense of the action. The district court entered a stipulated judgment order (the "judgment") on January 19, 2001, memorializing the $3.5 million settlement and directing that the judgment was "subject to the determination of the Virginia State Corporation Commission as to the priority to be accorded th[e]

3

judgment among the claims against, and liability of, the Receivership Estate."

The Directors filed a petition for payment and declaration of priority status with the Commission against Gross, as Deputy Receiver of Fidelity Bankers and Trustee of Fidelity Bankers Life Insurance Trust,[1] and against First Dominion Mutual Life Insurance Company.[2] The Directors asserted that the judgment represented statutory mandatory indemnification, to which they were entitled pursuant to Code § 13.1-698. They requested an order requiring the sum of $3.5 million of the estate to be reserved under Code § 38.2-1509 and not distributed by the Deputy Receiver until the issues were finally resolved. The Directors further requested a finding that the judgment was entitled to "priority status as an administrative expense," or in the alternative, that the judgment was entitled to priority status over other creditors, including any further payments toward the Plan Dividend. Finally, the Directors requested injunctive relief to require the Deputy Receiver to reserve $3.5 million from any final distribution of the Plan Dividend, until the judgment was satisfied or until the legal issues were finally resolved.

[1] The Trust was established by the Deputy Receiver for the management and realization of assets not transferred to Hartford under the Plan.

4

The Commission did not grant the requested injunctive relief, holding that if it found for the Directors, the judgment would have to be paid as an expense of administration and no injunction would be necessary. Otherwise, if the Commission found that the Directors were not entitled to be paid as an administrative expense, the Commission would have to modify its order of September 29, 1992, to pay the Directors in advance of the policyholders entitled to the Plan Dividend. The Commission held that it did not have the authority to modify a final order after 21 days following its entry. Furthermore, the Commission concluded that even if it had the authority, it declined "to impose such an extremely unfair and chaotic result on the many policyholders who made the choice to opt in to the Rehabilitation Plan."

With respect to the Directors' request for payment as an administrative expense, the Commission found:

> The [Directors'] right to indemnification arises by virtue of their services as directors . . . prior to the Receivership, not because of services benefiting the Estate thereafter. Under these circumstances the [Directors] are judgment creditors equal in status with other creditors, but not creditors to be paid as part of the expense of administration of the Receivership.

The Directors appeal the adverse ruling of the Commission.

---

[2] First Dominion Mutual Life Insurance Company is the successor to Fidelity Bankers.

## II.  Standard of Review

On appeal, the findings of the Commission are "presumed to be just, reasonable, and correct."  Swiss Re Life Co. Am. v. Gross, 253 Va. 139, 144, 479 S.E.2d 857, 860 (1997).  However, we will reverse the Commission when its decision is based upon a mistake of law.  Lake Monticello Serv. Co. v. Board of Supervisors of Fluvanna County, 237 Va. 434, 438, 377 S.E.2d 446, 448 (1989) (citing First Virginia Bank v. Commonwealth, 213 Va. 349, 351, 193 S.E.2d 4, 5 (1972)).

## III.  Analysis

On appeal, the Directors argue that the Commission erred in holding that the $3.5 million judgment was not entitled to be paid as an administrative expense of the receivership estate and by assigning the judgment the priority status of a general creditor under Code § 38.2-1509(B)(1)(v).  The Directors maintain that the judgment is entitled to be paid under Code § 38.2-1509(B)(1) as an administrative expense, or in the alternative, that the judgment is entitled to "equitable priority" over other general creditors, including the policyholders entitled to the Plan Dividend.  Finally, the Directors assert that the Commission erred when it denied their request for injunctive relief.

The Deputy Receiver argues that the Commission correctly determined that the judgment is an obligation due a general

6

creditor pursuant to Code § 38.2-1509(B)(1)(v).  He further

argues that the judgment is not entitled to equitable priority

because the Commission could not alter its final order entered

on September 29, 1992.  Finally, the Deputy Receiver maintains

that injunctive relief was not proper.

The relevant version of Virginia Code § 38.2-1509 provided:

B. The Commission shall disburse the assets of
an insolvent insurer as they become available
in the following manner: 1. Pay, after
reserving for the payment of the costs and
expenses of administration, according to the
following priorities: (i) wages entitled to
priority . . . (v) other creditors.

The Code does not define the phrase "costs and expenses of

administration," and the Deputy Receiver urges us to adopt the

definition from the United States Bankruptcy Code ("Bankruptcy

Code"), 11 U.S.C. § 503.  The Bankruptcy Code, 11 U.S.C.

§ 503(b)(1)(A), defines administrative expenses as "the actual,

necessary costs and expenses of preserving the estate, including

wages, salaries, or commissions for services rendered after the

commencement of the case."  The Deputy Receiver relies upon

United States Court of Appeals and Bankruptcy Court decisions

interpreting 11 U.S.C. § 503 to support his assertion that in

order to claim the status of an administrative expense, a

claimant "must demonstrate that the claimed expenses . . . arose

out of a post-petition transaction with the debtor-in-

possession."  See, e.g., In re Christian Life Ctr., 821 F.2d

7

1370, 1373-74 (9th Cir. 1987) (recognizing that "[c]laims that arise from a creditor's pre-petition services to the debtor are not entitled to administrative expense treatment"); see also In re Consolidated Oil & Gas, Inc., 110 B.R. 535, 537 (Bankr. D. Colo. 1990) (holding that claimants are not entitled to be paid as an administrative expense when the claim for indemnification arose "from strictly pre-petition services"). The Deputy Receiver maintains that because the action filed against the Directors was based entirely on their pre-receivership role as directors of Fidelity Bankers, their claim for indemnification is not entitled to be paid as an administrative expense.

Federal decisions interpreting 11 U.S.C. § 503 rely on the clause "after the commencement of the case" included in the statute to hold that a claim based on pre-receivership conduct is not entitled to be paid as an administrative expense. See, e.g., In re Consolidated Oil & Gas, 110 B.R. at 537. However, Virginia Code § 38.2-1509 does not contain such language. Further, the Deputy Receiver argues that we should adopt the requirement of "benefit to the estate" implied in the language of 11 U.S.C. § 503(b)(1)(A), which gives administrative expense status to actions to "preserve" the bankrupt estate. However, Virginia Code § 38.2-1509 does not contain such language. Because the language of Code § 38.2-1509 is demonstrably different from the definitions used in the Bankruptcy Code, we

8

decline to adopt the rationale employed by the federal courts in bankruptcy cases in our interpretation of Code § 38.2-1509.

It is important to note that the claim for statutory mandatory indemnification for directors did not arise until the Directors "entirely prevail[ed]" in the action brought against them by the Deputy Receiver. As such, the claim accrued well after the commencement of the receivership. The Deputy Receiver is charged with knowledge of Virginia's strong public policy of mandatory indemnification found in Code § 13.1-698, which provides that "a corporation shall indemnify a director who entirely prevails in the defense of any proceeding to which he was a party because he is or was a director of the corporation against reasonable expenses incurred by him in connection with the proceeding."

Unlike an action by a third party against directors, the action in question in this case was brought by the Deputy Receiver on behalf of the insolvent corporation. The action itself commenced after the receivership began, was done in the administration of the estate, and was instituted on behalf of the estate. If the $3.5 million award had been assessed as sanctions for bringing a frivolous lawsuit, it most certainly would have been a cost of administration, as conceded by the Deputy Receiver during oral argument. We see no reasonable distinction between the hypothetical award of sanctions for

9

bringing the action and the mandatory indemnification provided by statute. When the Deputy Receiver brought the action, he knew that the "costs" to the estate would include his legal fees and the Directors' fees by indemnification if they "entirely prevail[ed]." The Deputy Receiver's attorney's fees have been paid as a cost of the administration of the estate. There is no reason why the Directors' fees established by way of statutory indemnity should not also be paid as a cost of the administration of the estate.

We hold that the $3.5 million judgment in favor of the Directors is entitled to be paid as an expense of the administration of the estate under Code § 38.2-1509. Consequently, it is unnecessary to resolve the Directors' claim of equitable priority. Furthermore, it is unnecessary for this Court to issue an injunction to the Deputy Receiver. The Court's ruling is provided herein and the Deputy Receiver is a party who is bound by the opinion of this Court. For these reasons, the judgment of the Commission will be reversed and this matter will be remanded to the Commission for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.