**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| SHAUN ANDRIKOPOULOS and MICHAEL A. SANTER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 9899-VCP |
| SILICON VALLEY INNOVATION COMPANY, LLC, | ) ) ) | |
| Defendant. | ) ) | |

**OPINION**

Date Submitted: April 9, 2015
Date Decided: July 30, 2015

S. Mark Hurd, Esq., Ryan D. Stottmann, Esq., MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; *Attorneys for Plaintiffs*.

Brian M. Rostocki, Esq., John C. Cordrey, Esq., REED SMITH LLP, Wilmington, Delaware; *Attorneys for Defendant*.

**PARSONS, Vice Chancellor.**

This is an advancement case, albeit in the unusual context of a receivership. In a related case, on January 21, 2013, I appointed Bram Portnoy to be the Receiver of Silicon Valley Innovation Company, LLC ("SVIC" or the "Company").[1] SVIC's only assets are contingent claims against the Company's former officers and directors. Among the many cases filed by the Receiver were two in California in late 2013 and early 2014 that later were consolidated in the Superior Court for Los Angeles County. Two of the defendants in that action are the plaintiffs in this case: Shaun Andrikopoulos and Michael A. Santer. Those individuals requested from SVIC advancement for their legal expenses by virtue of their previous employment agreements with SVIC, but that request was denied. On July 18, 2014, Andrikopoulos and Santer (together, "Plaintiffs") commenced this advancement action.

SVIC moved to dismiss the advancement claims and Plaintiffs sought summary judgment on those claims. In opposing summary judgment, SVIC took the position that Plaintiffs had no advancement rights because, among other things, their employment agreements were the product of fraud. SVIC also contended that this case belongs in Los Angeles. The parties presented argument on those motions on November 21, 2014. By order entered January 20, 2015, I denied both Plaintiffs' motion for summary judgment and SVIC's motion to dismiss and set this case for trial on April 9, 2015, to resolve the issue of whether the employment agreements were fraudulent. Ultimately, however, SVIC abandoned its fraud defense and the parties stipulated, on April 8, 2015, to

---

[1] *Jagodzinski v. Silicon Valley Innovation Co., LLC*, C.A. No. 7378-VCP, D.I. 28 (Del. Ch. Jan. 21, 2013) (ORDER) [hereinafter "Receivership Order"] ¶ 1.

1

Plaintiffs' entitlement to advancement and the validity of the employment agreements. One issue remains for decision: to what extent, if any, Plaintiffs' advancement claims are entitled to priority as against the other claims asserted against SVIC in the receivership. The parties effectively agreed to submit that issue for decision on a stipulated record. For the reasons that follow, I conclude that Plaintiffs' advancement claims should be treated on par with the claims of other unsecured creditors and paid pro rata.

## I. Priority of Advancement in the Receivership Context

The main dispute between the parties is the narrow, but previously unanswered legal question of whether, in the context of a receivership estate under Delaware law, advancement claims are administrative expenses or unsecured creditor claims. If Plaintiffs' claims are entitled to some sort of priority, there is an even narrower sub-issue of whether the Receiver's salary and expenses still have priority over those claims.

SVIC asserts that advancement is a pre-petition claim, because it is based on conduct that occurred before the receivership was instituted and, further, that advancement essentially is a form of compensation for services that Plaintiffs rendered before the receivership began. Thus, similar to the bankruptcy context, SVIC maintains that Plaintiffs' claims should be paid pro rata with those of the other unsecured creditors. Plaintiffs disagree, arguing: that advancement is a cost of bringing a lawsuit against a former officer with advancement rights; that there is a strong public policy in favor of advancement; and that a receivership is different from bankruptcy. Basically, Plaintiffs contend that the expenses for which they seek advancement arose as part of the administration of the estate and the pursuit of SVIC's assets—*i.e.*, claims against former

2

management—and as such are administrative expenses to be paid on par with the Receiver's compensation.

SVIC relies heavily on an analogy to federal bankruptcy law. One problem with this analogy is that bankruptcy proceedings are governed by a lengthy and complex statutory framework mandating a particular and well-defined schedule of priorities, including what qualifies as an administrative expense,[2] which essentially is the status that Plaintiffs contend I should accord to their advancement claims. Indeed, one indication that receivership and bankruptcy are not virtually identical is that the Receivership Order here allows the Receiver to take SVIC into bankruptcy.[3]

Delaware receiverships, by contrast to bankruptcy estates, are governed by a few short statutory provisions,[4] the Court of Chancery Rules,[5] and the discretion of this Court. Furthermore, SVIC is a limited liability company ("LLC"), not a corporation. The statutory pronouncements for receiverships in the LLC context are even fewer in number.[6] Regardless, I find the provisions of the Delaware General Corporation Law (the "DGCL") on receiverships useful by analogy. As will be shown, however, the Court still is left with minimal statutory guidance on the question before me.

---

[2]   11 U.S.C. § 503(b).

[3]   Receivership Order ¶ 2(d).

[4]   6 *Del. C.* § 18-805; *see also* 8 *Del. C.* §§ 291-303.

[5]   Ct. Ch. Rs. 148-168.

[6]   6 *Del. C.* § 18-805; *see also* 8 *Del. C.* § 291 (analogous statutory framework in corporate context).

3

The only DGCL provision relevant to priority of claims in a receivership reads, in pertinent part:

> The Court of Chancery, before making distribution of the assets of a corporation among the creditors or stockholders thereof, shall allow a reasonable compensation to the receiver . . . for such receiver's . . . services, and the costs and expenses incurred in and about the execution of such receiver's . . . trust, and the costs of the proceedings in the Court, to be first paid out of the assets.[7]

This language makes clear that the receiver's fees and the "the costs and expenses incurred in and about the execution" of administering the receivership estate deserve priority treatment. Plaintiffs ask me to conclude that their advancement claims constitute a cost of administering the estate. This line of reasoning posits that, were SVIC not in receivership, then SVIC would be required to pay for both the prosecution and defense of any claims against Plaintiffs brought by SVIC, meaning that Plaintiffs' advancement rights are a cost of such a lawsuit. For the reasons that follow, I reject this argument for higher priority. One of the problems with Plaintiffs' argument is that it ignores the difference between a corporate entity in the ordinary course and one in receivership.

In terms of case law, I am not aware of any relevant cases in this jurisdiction. One recent decision from another jurisdiction, relied upon heavily by Plaintiffs, does examine the precise issue before me. That case is *S.E.C. v. Illarramendi*,[8] a 2014 decision by the U.S. District Court for the District of Connecticut. The court in *Illarramendi*, applying

---

[7] 8 *Del. C.* § 298.

[8] 2014 WL 545720 (D. Conn. Feb. 10, 2014).

Delaware law, rejected the bankruptcy analogy as unpersuasive.[9] Relying on three other cases from various courts around the country that afforded administrative priority to mandatory indemnification claims in the receivership context, the *Illarramendi* court concluded that, like indemnification, advancement also should receive administrative priority.[10] In making its determination, the court relied on Delaware's strong policy in favor of advancement and indemnification as incentives to attract qualified individuals to serve as corporate officers and directors.[11] An older case from the Third Circuit Court of Appeals, also applying Delaware law and relying on this State's policy in favor of advancement, similarly ordered the payment of advancement in the context of a

---

[9]     *Id.* at *8 ("Although there are parallels between the goals of receiverships and bankruptcy courts to distribute limited assets, the goal of this Receivership is to wind up operations of the Estate and compensate the victims of Illarramendi's fraud, not to promote the rehabilitation of a business.").

[10]    *Id.* at *7 ("In the context of the strong Delaware policy of indemnification and advancement of attorney's fees, the reasoning of [those cases] is persuasive, even though the former directors there had already prevailed in the receivers' actions against them, because the same policy considerations that favor indemnification after a director prevails on the merits also favor the advancement of legal fees to defend a claim.") (citing *Weingarten v. Gross*, 563 S.E.2d 771 (Va. 2002), *Fleischer v. Fed. Deposit Ins. Corp.*, 70 F. Supp. 2d 1283 (D. Kan. 1999), and *Lawson v. Young*, 486 N.E.2d 1177 (Ohio App. 1984)).

[11]    *See, e.g.*, *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005) ("Indemnification encourages corporate service by capable individuals by protecting their personal financial resources from depletion by the expenses they incur during an investigation or litigation that results by reason of that service. . . . Advancement is an especially important corollary to indemnification as an inducement for attracting capable individuals into corporate service. Advancement provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings."); *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 344 (Del. 1983).

5

receivership.[12]  Interestingly, in neither case did the plaintiffs actually receive advancement.[13]  Thus, despite the holdings of those cases, I know of no case that has ordered advancement in the context of a receivership in which advancement in fact has been paid.

## II.  The Bankruptcy Analogy

While acknowledging Delaware's strong public policy in favor of advancement, SVIC counters by arguing that advancement ultimately is a contract claim and that Plaintiffs are merely two more individuals with unsecured claims against SVIC.  In that regard, Defendant relies heavily on bankruptcy law, which it contends is highly analogous.  If this case were a bankruptcy proceeding (which it is not) in which the plaintiffs were requesting administrative priority status for their advancement claims—which Plaintiffs essentially seek here—the relevant bankruptcy case law overwhelmingly supports the denial of such a request.

To qualify for administrative priority under 11 U.S.C. § 503(b)(1)(A), the relevant bankruptcy provision, two elements are required: the bankrupt estate must incur (1) a

---

[12]     *Ridder v. CityFed Fin. Corp.*, 47 F.3d 85, 87-88 (3d Cir. 1995).

[13]     In other related proceedings in *Ridder*, the Office of Thrift Supervision issued a cease-and-desist order preventing the bank, then in receivership, from paying the advancement.  The Third Circuit eventually vacated the district court injunction ordering payment of the advancement.  *Ridder v. Office of Thrift Supervision*, 146 F.3d 1035, 1037-38 (D.C. Cir. 1998) (recounting this history).  In *Illarramendi*, the district court later concluded that the defendants were not entitled to advancement because of unclean hands.  *S.E.C. v. Illarramendi*, 2014 WL 8019048, at *1 (D. Conn. Mar. 27, 2014).

6

post-petition obligation (2) as a result of actions that benefitted the estate.[14]  Recast for present purposes, SVIC asks this Court to conclude that priority should be accorded only to expenses incurred (1) after the appointment of a receiver that (2) substantially benefitted the estate.  If such a test were to apply, I would conclude, guided by the bankruptcy cases, that Plaintiffs could not meet either prerequisite.

I begin with the second prong, which is more straightforward: SVIC has minimal assets and any assets dissipated to finance the defense of those former officers and directors that SVIC is suing almost certainly would harm the estate; it would make prosecution of SVIC's claims more difficult, if not practically impossible, given Defendant's financial constraints, and could create additional credit risk, even if SVIC succeeds.  At best, to the extent advancement is only an extension of credit and therefore a financial wash[15]—a proposition that appears unrealistic in the context of this receivership—the receivership estate still does not receive a "benefit" from paying advancement.[16]

---

[14]  *See generally In re Hackney*, 351 B.R. 179, 185-95 (Bankr. N.D. Ala. 2006) (collecting an impressive 115 cases, across numerous circuits, district courts, and bankruptcy courts over the course of more than two decades supporting this proposition).

[15]  *See Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 997-98 (Del. Ch. 2012) (describing advancement as an extension of credit giving rise to no net liability on the part of the corporation) (quoting *Advanced Mining Sys., Inc. v. Fricke*, 623 A.2d 82, 84 (Del. Ch. 1992)).

[16]  One recognized purpose of advancement is to attract qualified individuals to serve as directors and officers.  Plaintiffs arguably served as officers of SVIC in part because of the promise of advancement.  In that sense, therefore, SVIC did receive

7

Although the question is closer, Plaintiffs would not satisfy the first prong of the administrative priority test either. Undeniably, the obligation by SVIC to advance Plaintiffs' current attorneys' fees did not arise until the Receiver, on behalf of SVIC, filed a lawsuit against them. The bankruptcy courts, however, repeatedly have addressed this same question[17] in the administrative expense context and concluded that the post-petition requirement was not satisfied. In 1984, the U.S. District Court for the Southern District of Ohio addressed the issue, which apparently was one of first impression in light of the recently amended bankruptcy code,[18] of whether the bankruptcy court "has the discretion to permit a Chapter 11 debtor to advance its present and former non-management directors' funds from the estate with which to pay for their defense, as individual defendants, in securities actions alleging misconduct during their terms as directors."[19] The board of the debtor corporation had authorized payment of the

---

a benefit, long ago, in the form of those services, for which it only now is paying the full price. But, even if true, this line of reasoning ignores that any benefit received by SVIC accrued pre-receivership; the focus here, however, is on whether the *receivership estate* would receive a benefit. It would not.

[17] My review of the bankruptcy case law indicates that the bankruptcy courts often conflate the concepts of advancement and indemnification. Not infrequently, those courts speak instead of "reimbursement" for attorneys' fees. *See, e.g.*, *In re RNI Wind Down Corp.*, 369 B.R. 174, 182 (Bankr. D. Del. 2007) (recognizing distinction between the two concepts, but noting that "[t]he distinction is irrelevant for present purposes, however, because, regardless of whether the claim is for advancement or indemnification, the claimant is seeking reimbursement").

[18] *See generally* Charles Jordan Tabb, *The History of the Bankruptcy Laws in the United States*, 3 AM. BANKR. INST. L. REV. 5, 32-37 (1995) (describing the Bankruptcy Reform Act of 1978).

[19] *In re Baldwin-United Corp.*, 43 B.R. 443, 445 (S.D. Ohio. 1984).

advancement. The court nevertheless refused to afford administrative priority to claims for advancement of fees to *former* officers.

In so holding, the court made several pertinent comments. First, with respect to when the transaction occurred, the court noted: "Because a determination that a debt which matured pre-petition but did not come due until post-petition is, we think, wholly outside the statute, we see no basis for the assertion that the court enjoys the discretion to authorize such expenditures as administrative expenses."[20] Applying the same reasoning here would support the conclusion that the relevant advancement obligation is a pre-receivership obligation, even though the actual payment did not come due until after the appointment of the Receiver. Numerous bankruptcy court decisions have declined to give administrative expense priority to claims of a similar "pre-petition agreement, post-petition payment obligation" nature, even when the bankrupt estate receives the benefits of the transaction post-petition.[21]

Second, the *Baldwin-United* court emphasized the distinction between the pre- and post-petition entities, stating: "While the distinction between the pre- and post-petition entities appears at first to be a fiction, it is not so ethereal as that. Rather the debtor-in-possession holds the position of trustee, and as such controls the estate *for the benefit of the creditors* instead of for its own benefit."[22] Similarly, in a receivership, the board of

---

[20]    *Id.* at 454.

[21]    *See In re Hackney*, 351 B.R. at 197-200 (collecting 27 such cases).

[22]    *In re Baldwin-United Corp.*, 43 B.R. at 454.

directors no longer controls the corporation; instead, the receiver is to "to take charge of [the company's] assets, estate, effects, business and affairs, and to collect the outstanding debts, claims, and property due and belonging to the corporation,"[23] and then distribute those assets pro rata by order of priority to the company's claimants.[24]

Finally, the *Baldwin-United* court acknowledged that its holding "has potentially disastrous implications for [former officers and directors]."[25] Throughout its opinion, that court contrasted the potentially competing policy goals of advancement and bankruptcy, but concluded that the federal bankruptcy code dictated the outcome.

Since *Baldwin-United*, with quite limited exceptions,[26] the bankruptcy courts generally have held that, at least with respect to former officers and directors, claims for advancement do not qualify for administrative priority.[27] Claims for advancement by

---

[23]     8 *Del. C.* § 291.

[24]     *Id.* § 281. Presumably, the costs of the receivership are paid under 8 *Del. C.* § 298 before assets are distributed to the other claimants. *See Ferry v. Kehnast*, 2008 WL 2154861, at *6 (Del. Ch. May 6, 2008) (noting potential tension between Sections 298 and 281, but still ordering that the receiver be paid first).

[25]     *In re Baldwin-United Corp.*, 43 B.R. at 457.

[26]     *See In re RNI Wind Down Corp.*, 369 B.R. 174 (Bankr. D. Del. 2007) (refusing to disallow former officer's advancement claims when the company had advanced those fees before the bankruptcy, the fees were capped at a certain amount, and the reorganization was accomplished in the context of a sale under Section 363 of the bankruptcy code, providing the debtor with sufficient funds to cover the expenses). The reason for the different outcome in the *RNI Wind Down* case is not entirely clear, but the advancement issue was not argued in the context of administrative priority.

[27]     *See Wojick v. Hudson Funding LLC*, 2013 WL 2085959, at *4 (N.D. Ohio May 13, 2013) ("Defendants cannot claim that the contractual obligation to advance

---

10

*current* directors or officers, especially in relation to post-petition conduct and services, appear to be treated differently,[28] but that factual situation is not before me.

### III.    The Appropriate Outcome Here

To summarize the foregoing review: (1) there is no controlling Delaware authority; (2) the Delaware statutes on receivership provide minimal guidance; (3) the *Illarramendi* decision and Delaware's strong policy in favor of advancement point in one direction; and (4) a strong analogy between receiverships and bankruptcy points in the other direction. In attempting to reconcile these somewhat dissonant findings, I am mindful that this Court has broad discretion in the receivership context.[29]

---

fees and indemnify arose from a transaction with the bankruptcy estate nor did these obligations provide a benefit to the bankruptcy estate."); *see also In re Heck's Props., Inc.*, 151 B.R. 739, 767 (S.D. W. Va. 1992) ("Numerous courts have denied administrative expense priority . . . to corporate officials seeking indemnification under the provisions of corporate by-laws when it is determined that the acts or services which gave rise to the claims occurred before rather than after the filing of the petition for relief in bankruptcy.").

[28]    *See In re Adelphia Commc'ns Corp.*, 323 B.R. 345 (Bankr. S.D.N.Y. 2005) (ordering advancement, which was authorized by the board, to the current directors, but only to the extent advancement was mandatory under the relevant entities' operational documents and governing instruments); *In re Heck's Props., Inc.*, 151 B.R at 768 ("Inasmuch as the claim against the officers and directors of [the company] related solely to post-petition conduct and services, the bankruptcy judge properly concluded that the officers and directors were entitled to indemnification under [the company's] Articles of Incorporation and could be afforded administrative cost priority . . . .").

[29]    *E.g.*, Ct. Ch. R. 148 ("Rules 149 to 168 shall apply to all cases in which receivers are appointed . . . provided, however, that the Court may relieve the receivers or trustees from complying with all or any of the duties and procedures set forth in Rules 149 through 168 and may impose such other duties or prescribe such other procedures as the Court may deem appropriate.").

After careful consideration, I conclude that Plaintiffs' advancement claims should be treated the same as the claims of other unsecured creditors. Several reasons, in no particular order, favor this conclusion. First, while advancement is important, so is the successful winding up of a corporation or other business entity. A corporate entity is managed for the benefit of the entity and its stockholders. In the usual receivership context, however—and especially in receiverships like this one—there is no long-term horizon; the focus is on winding up the entity's affairs. As such, the relevant importance of the policy justification of advancement as an inducement to attract qualified individuals to manage the company is diminished. Additionally, granting administrative priority to advancement claims, such as Plaintiffs' claims here, seriously could undermine, if not entirely eliminate, the ability of companies in receivership to pursue claims against former management.

Second, even though I do not find the bankruptcy analogy as powerful as SVIC suggests,[30] there is substantial force to the idea that the pre-receivership entity and the receivership entity are meaningfully different: they are managed by different individuals for different purposes and are governed by different rules. Thus, while I am not bound by the administrative priority case law that has developed in the bankruptcy context, I view the essential distinction it recognizes as important in this case also. Advancement

---

[30] As Plaintiffs point out, many of the holdings in the bankruptcy cases cited herein resulted from the requirements laid out in bankruptcy's detailed statutory framework. The Delaware receivership statutes are much more barebones in comparison. Nevertheless, I find unpersuasive Plaintiffs' argument that those statutory differences justify adopting a drastically different approach for handling advancement claims.

12

obligations are contractual in nature and generally arise from pre-receivership transactions. In that respect, they are no different from other creditors' claims.

Plaintiffs contend that this result frustrates the expectations of advancement legitimately held by former corporate officers and directors, like themselves. This brings me to my third point, which involves balancing the existence of advancement rights against the realities of insolvent entities. Market-based solutions already may exist for ameliorating the challenges that may arise in this area. Indeed, various articles by practitioners have discussed potential solutions to the problem of obtaining advancement from an insolvent entity. Those articles highlight insurance as the best solution.[31]

Fourth, the reality of practical administration weighs in favor of treating advancement claims the same as the claims of other unsecured creditors. The parties disputed whether, if Plaintiffs' advancement claims were entitled to administrative priority, the Receiver's fees should receive super-priority. There are policy reasons— such as incentivizing talented individuals to serve as receivers of troubled entities—to favor such an outcome. Yet, as the parties' positions at the argument demonstrated, if the Receiver's own fees are so important, what of other "necessities," such as a bookkeeper, office space, a rental car, etc.? Once the line drawing among those items begins, courts face the danger of becoming embroiled in time-consuming, line-item accounting disputes.

---

[31] *See, e.g.*, William D. Johnston et al., *Bankruptcy: The Game-Changer for Directors & Officers Who May Face Claims by Shareholders or Others*, SEC. LITIG. REPORT, Dec.-Jan. 2010, at 3-4.

**Conclusion**

For the foregoing reasons, I conclude that SVIC is entitled to entry of an order declaring that: (1) Plaintiffs' claims for advancement are not entitled to administrative priority or otherwise to receive priority treatment as administrative expenses of the receivership; and (2) Plaintiffs' request for advancement of legal fees and expenses should be treated as a pre-petition, unsecured claim without administrative priority. Each party shall bear its own attorneys' fees and expenses for this aspect of Plaintiffs' case. Counsel for the parties shall confer about an appropriate form of final order and judgment in this action, and shall file a proposed final order and judgment, on notice, by August 10, 2015.