**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: October 4, 2021
Date Decided: January 19, 2022

Joseph C. Schoell, Esquire
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801

Corinne Elise Amato, Esquire
Eric J. Juray, Esquire
Jason W. Rigby, Esquire
Prickett, Jones & Elliott, P.A.
1310 King Street
Wilmington, DE 19801

James M. Yoch, Jr., Esquire
Kevin P. Rickert, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

Michael W. McDermott, Esquire
Peter C. McGivney, Esquire
Berger Harris LLP
1105 North Market Street, 11th Floor
Wilmington, DE 19801

Re:  *Agspring Holdco, LLC, et al. v. NGP X US Holdings, L.P., et al.*
     C.A. No. 2019-0567-JRS

Dear Counsel:

This Letter Opinion addresses three motions: (1) Plaintiff, Agspring Holdco, LLC's ("Holdco") Motion for Preliminary Injunction; (2) Holdco's Motion to File a Verified Second Amended and Supplemental Complaint; and (3) Defendants' Motion to Stay. In a separate Letter Opinion issued today, I have addressed motions pending in related litigation involving Defendant, NGP X US Holdings, L.P.'s

("NGP") right to advancement of litigation expenses (the "Advancement Opinion").[1]  For the reasons stated below, the Motion for Preliminary Injunction is denied; the Motion to Amend is granted in part and denied in part; and the Motion to Stay is granted.

## I. BACKGROUND

The background of the parties' relationship and disputes is stated more fully in the Advancement Opinion.  Relevant here, in 2012, Defendants NGP, Randal Linville and Bradley Clark formed Agspring, LLC ("Agspring").[2]  Two agreements, the Limited Liability Company Agreement of Agspring, LLC (the "LLC Agreement") and the Advisory Services, Reimbursement and Indemnification Agreement (the "Services Agreement") (together, the

---

[1] *Agspring, LLC v. NGP X US Hldgs., L.P.*, C.A. No. 2019-1021-JRS (Del. Ch. Jan. 19, 2022) (D.I. 95).

[2] Verified Am. Compl. ("Compl.") (D.I. 28) ¶ 27.

"2012 Agreements") governed the relationship between NGP and Agspring and contained advancement, arbitration and indemnification rights.[3]

In December of 2015, NGP sold its interest in Agspring to American Infrastructure MLP Funds ("AIM") as memorialized in a Membership Interest Purchase and Contribution Agreement (the "MIPCA").[4] To consummate the deal, AIM created Agspring, LP, which was later converted into Plaintiff Agspring Holdco, LLC ("Holdco").[5] Other Plaintiffs in this action—LVS II SPE XVIII LLC, HVS V LLC, and TOBI XXI, LLC (the "Investor LLCs")—provided financing for the transaction.[6]

In this case, Plaintiffs, led by Holdco, allege, among other things, that Defendants made fraudulent representations in the MIPCA.[7] A month after

---

[3] Am. Verified Compl. ("Inj. Action Compl.") (C.A. 2019-1021-JRS) (D.I. 61) Ex. B-1, at 34–35, 47–49; Inj. Action Compl. Ex. B-2, at 2–6.

[4] Compl. ¶¶ 2, 4; Compl. Ex. 1 (the "MIPCA").

[5] *Id.*

[6] Compl. ¶ 3.

[7] Compl. ¶¶ 4–10.

Plaintiffs filed their complaint, NGP wrote to Agspring and demanded that Agspring advance NGP's legal fees and expenses in defending this and other litigation under the terms of the Services Agreement.[8] On December 12, 2019, NGP filed a demand for arbitration with JAMS to prosecute its advancement claim, among others.[9] In response, Agspring moved in this Court to enjoin the arbitration, arguing that the MIPCA superseded the Services Agreement and placed NGP's claims within the exclusive jurisdiction of Delaware courts.[10] Following argument, this Court held that because the arbitration clause in the Services Agreement delegated the question of arbitrability to the arbitrator, the arbitrator must determine the ongoing validity and reach of the 2012 Agreements.[11]

In the arbitration that followed, the panel held that the advancement claim was arbitrable, the 2012 Agreements survived the MIPCA and governed NGP's

---

[8] Inj. Action Compl. ¶ 1.

[9] Inj. Action Compl. ¶¶ 3, 31.

[10] Pl. Agspring, LLC's Opening Br. in Supp. of its Mot. for Prelim. Inj. (C.A. 2019-1021-JRS) (D.I. 3) at 1–2.

[11] Inj. Action Compl. ¶ 35.

advancement rights, and that Agspring owed advancement to NGP.[12]   Agspring continues to challenge the arbitration panel's award, and that dispute has been addressed in the Advancement Opinion.

Agspring has refused to pay advancement costs, stating that "Agspring does not have sufficient liquidity to pay the advancement demanded by NGP and continue to operate."[13]   According to Agspring, if NGP enforces its advancement demand by reducing it to a judgment, that act alone will trigger defaults with Agspring's creditors and allow them to foreclose on all of Agspring's assets.[14]

Holdco is not a party to the Services Agreement, the companion case in this court or any arbitration proceeding with NGP.   Nevertheless, Holdco brings the Motion for Preliminary Injunction, asking this Court to prohibit NGP from further pursuing claims for advancement against Agspring as barred by contract and by the

---

[12] Inj. Action Compl. ¶¶ 36–37, 40.

[13] Agspring Holdco, LLC's Opening Br. in Supp. of its Mot. for Prelim. Inj. ("Holdco PI Br.") (D.I. 164) at 9; Aff. of Bruce Chapin in Supp. of Agspring Holdco, LLC's Br. in Supp. of Prelim. Inj. ("Chapin Aff.") (D.I. 164) ¶ 5.

[14] Holdco PI Br. at 9; Chapin Aff. ¶ 6.

doctrines of equitable and quasi-estoppel. Holdco concurrently brings the Motion to Amend, seeking "to include new evidence of NGP's fraud related to the same transaction, conduct, and occurrence set forth in the initial Complaint—the sale of Agspring."[15] In response, NGP filed the Motion to Stay, arguing that this Court should stay this action until Agspring complies with its advancement obligations.

## II. ANALYSIS

As noted, Plaintiffs move for a preliminary injunction and to amend the complaint. Defendant NGP moves to stay this action until Agspring pays the advancement award. Each motion will be addressed in turn below.

### A. The Motion for Preliminary Injunction

Holdco moves for a preliminary injunction to prevent NGP "from taking further actions contrary to its promises and representations" in the MIPCA.[16] Holdco argues that the MIPCA contains promises that preclude NGP from enforcing any advancement right against Agspring to harm Holdco. These include

---

[15] Pl. Agspring Holdco, LLC's Mot. for Leave to File a Verified Second Am. & Suppl. Compl. ("Agspring Am. Mot.") (D.I. 163) at ¶ 19.

[16] Holdco PI Br. at 1.

representations or promises that: Agspring had no undisclosed indemnification obligations amounting to more than $200,000; NGP had no undisclosed rights against and no undisclosed material contracts with Agspring; and NGP was delivering its interests in Agspring to Holdco free of any claims.[17]

As noted, Holdco argues that a preliminary injunction is necessary because Agspring does not have sufficient liquidity to pay the advancement demanded by NGP and continue to operate. Moreover, if NGP enforces its advancement demand by reducing it to judgment, that would trigger defaults with Agspring's and its subsidiaries' senior creditors, giving those creditors the right to foreclose on Agspring and its subsidiaries and seize all assets.[18] "Unless enjoined, NGP's actions to enforce its purported temporary right to advancement are likely to destroy

---

[17] *Id.* at 2; *see* MIPCA §§ 3.2(b), 4.5(a)(xvi), 4.23, 5.1.

[18] Holdco PI Br. at 9.

Agspring permanently."[19]   This allegedly threatens irreparable harm to Holdco because Agspring is "Holdco's sole asset."[20]

The preliminary injunction standard is well-established.  A plaintiff must show: (1) a reasonable probability of success on the merits, (2) irreparable harm, and (3) that a balance of equities favor an injunction.[21]  As discussed below, NGP argues that Holdco has dressed a request for permanent injunctive relief in preliminary injunction clothes in hopes of lessening the burden it must carry to obtain relief.  While I agree with that assessment, even if the preliminary injunction standard provides the correct analytical framework here, as explained below, Plaintiffs cannot satisfy the first element, so the Motion for Preliminary Injunction fails.

Holdco argues that this Court should enjoin the arbitration award because the panel did not consider its rights under the MIPCA, but the panel expressly reviewed

---

[19] *Id.*

[20] *Id.* at 21.

[21] *Revlon, Inc. v. MacAndrews & Forbes Hldgs., Inc.*, 506 A.2d 173, 179 (Del. 1986).

the MIPCA in determining that (1) the 2012 Agreements survive and govern NPG's

advancement rights; and (2) the Services Agreement requires advancement.[22]

As noted, the arbitration panel found that the MIPCA did not supersede the Services

Agreement, nor were NGP's rights under the Services Agreement waived by its

failure to disclose the agreement in the MIPCA. Thus, the arbitration panel

determined that the arbitration provision in the Services Agreement remained valid

despite the MIPCA. Once the issue of arbitrability was settled, the arbitration panel

then issued an order directing that Agspring must advance legal fees to NGP. That

order has been confirmed in the Advancement Decision.

Holdco's Motion for Preliminary Injunction must be denied, then, because

"[t]he claims underlying Holdco's request for injunctive relief raise issues Agspring

previously litigated in the Arbitration and lost."[23] This Court will not enjoin the

effect of a now-confirmed arbitration order as somehow inconsistent with the

---

[22] This analysis is discussed thoroughly in the Advancement Opinion.

[23] Def. NGP X US Hldgs., L.P.'s Corrected Omnibus Br. Regarding Arbitration Award and Other Matters ("NGP Omnibus Br.") (D.I. 200) at 53.

MIPCA when the panel expressly considered the MIPCA provisions at issue in reaching its award.

Of course, Holdco was not a party to the arbitration; Agspring was. NGP argues that issue preclusion applies here because of privity, barring reconsideration of these issues. I agree. Issue preclusion under the doctrine of collateral estoppel applies when:

> (1) The issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in a prior action.[24]

Those factors are each satisfied here. For the reasons stated above and in the Advancement Opinion, Holdco brings the same arguments rejected by the arbitration panel in reaching its award, and arbitration awards are final adjudications.[25] Moreover, Agspring and Holdco are in privity. "For purposes of

---

[24] *Betts v. Townsends, Inc.*, 765 A.2d 531, 535 (Del. 2000) (citing *State v. Machin*, 642 A.2d 1235, 1239 (Del. Super. Ct. 1993)).

[25] *E.g.*, *Global Link Logistics, Inc. v. Olympus Growth Fund III, L.P.*, 2010 WL 338214, at *4 n.30 (Del. Ch. Jan. 29, 2010) ("Delaware courts give valid and final arbitration awards 'the same effect as a court's judgment under the doctrine of *res judicata*.'") (citing

res judicata [or collateral estoppel], two parties are in privity where the 'relationship between two or more persons is such that a judgment involving one of them may justly be conclusive on the others, although those others were not party to the lawsuit."[26]  In this regard, "[a] critical factor for the privity analysis is whether the interests of a party to the first suit and the party in question in the second suit are aligned."[27]

Holdco argues that it is not in privity with Agspring because "Holdco is not a party to the Services Agreement" and "is not bound by the decisions of an

---

*Mehiel v. Solo Cup Co.*, 2007 WL 901637, at \*5 (Del. Super. Ct. Mar. 26, 2007)); *Cooper v. Celente*, 1992 WL 240419, at \*5–6 (Del. Super. Ct. Sept. 3, 1992) ("This Court decides that an arbitration award such as the one issued in this dispute has res judicata effect on subsequent litigation efforts in the courts.  This holding is in accordance with Delaware's strong public policy in favor of arbitration . . . .").

[26] *Washington House Condominium Assoc. of Unit Owners v. Daystar Sills, Inc.*, 2015 WL 6750046, at \*7 (Del. Super. Ct. Oct. 28, 2015) (citing *Grunstein v. Silva*, 2011 WL 378782, at \*8 (Del. Ch. Jan. 31, 2011)).

[27] *Id.*; *see also Levinhar v. MDG Med., Inc.*, 2009 WL 4263211, at \*8 (Del. Ch. Nov. 24, 2009) ("This court has noted that a substantial identity of parties' interests has been held to place two superficially separate parties in privity and that, at bottom, the test of privity is whether there is a close or significant relationship between successive defendants.") (internal quotation marks and footnotes omitted).

arbitration in which it had no obligation to participate."[28]   But Holdco's own authority recognizes that privity can arise from the nature of the parties' relationship and need not be derived from contract.[29]   In this case, Holdco's and Agspring's interests are directly aligned; indeed, they have litigated in lockstep, they are both plaintiffs in this case and they both share the same counsel.[30]

Given that the elements for collateral estoppel have been satisfied, the resolution of factual and legal issues by the arbitration panel is justly conclusive on both Agspring and Holdco.   Thus, Holdco cannot demonstrate a reasonable probability of success on the merits because the advancement award bars it, as a matter of privity, from litigating anew the issues Agspring already lost at arbitration.

---

[28] Combined Reply Br. in Supp. of Agspring Holdco, LLC's Mots. to Am. the Compl. and for Prelim. Inj. and Agspring, LLC's Mot. for Declaratory J. and to Vacate the Arbitration Award (D.I. 206) at 6.

[29] *See Hartford Acc. & Indem. v. Columbia Cas. Co.*, 98 F. Supp. 251, 256–57 (D. Conn. 2000).

[30] *See* NGP Omnibus Br. at 54–56; *see also Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 677 (5th Cir. 2003) (finding privity between the parties in part because they were "represented by the same counsel"); *Levinhar v. MDG Med., Inc.*, 2009 WL 4263211, at *8 (Del. Ch. Nov. 24, 2009) (same).

Moreover, Holdco purports to seek a "preliminary injunction," but as NGP points out, "deciding the merits while denying advancement to NGP is tantamount to a permanent injunction, because it will prevent NGP from ever vindicating its right to advancement."[31] Thus, NGP argues "the Court should apply the standard for a permanent injunction."[32] Here again, I agree. "This Court has utilized the higher mandatory injunction standard where, instead of seeking 'to preserve the status quo as interim relief, Petitioners, as a practical matter, seek the very relief that they would hope to receive in a final decision on the merits.'"[33] Delaying adjudicated advancement rights until the conclusion of underlying litigation is tantamount to denying them. Indeed, "[t]his Court has long recognized that a delay in recognizing advancement rights may ultimately render those rights illusory."[34]

---

[31] *Id*. at 52.

[32] *Id.*

[33] *Alpha Builders, Inc. v. Sullivan*, 2004 WL 2694917, at *3 (Del. Ch. Nov. 5, 2004) (quoting *Joyland Daycare Ctr. v. Dep't of Servs. for Children, Youth & Their Families*, 1996 WL 74713, at *2 (Del. Ch. Jan. 22, 1996)).

[34] *Perryman v. Stimwave Techs. Inc.*, 2020 WL 2465720, at *4 (Del. Ch. May 13, 2020).

A permanent injunction is an "extraordinary remedy"[35] and, as such, the party seeking such relief is required "to demonstrate that: (1) it has proven actual success on the merits of the claims; (2) irreparable harm will be suffered if injunctive relief is not granted; and (3) the harm that will result if an injunction is not entered outweighs the harm that would befall the defendant if an injunction is granted."[36] Holdco has not even demonstrated the "reasonable probability of success" necessary for a preliminary injunction, so it follows that it has not demonstrated actual success on the merits either.

For the reasons just stated, the Motion for Preliminary Injunction must be denied.[37]

---

[35] *N. River Ins. Co. v. Mine Safety Appliances Co.*, 105 A.3d 369, 385 (Del. 2014).

[36] *Korn v. New Castle Cty.*, 2005 WL 2266590, at *14 (Del. Ch. Sept. 13, 2005).

[37] I note that the Motion for Preliminary Injunction arguably seeks both prohibitive and mandatory relief. The Motion seeks an order that would direct NGP to act in a manner that it is not otherwise inclined to act. *See* Holdco PI Br. at 3 ("Holdco therefore requests that this Court require NGP to act consistent with its representations to Holdco in the MIPCA and to refrain from taking any further enforcement steps against Agspring."). This appears to be, at least partially, mandatory injunctive relief. *See C&J Energy Servs., Inc. v. City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr.*, 107 A.3d 1049, 1071 (Del. 2014) (noting a mandatory injunction "requir[es] a party to take affirmative action"); *Tebo v. Hazel*, 74 A. 841, 846 (Del. Ch. 1909) (defining a mandatory injunction as "one

### B. The Motion to Amend

Holdco moves to amend its complaint in three respects: (1) to remove claims dismissed by this Court's July 30, 2020 Memorandum Opinion, (2) to add facts regarding NGP's fraud, and (3) to add counts for equitable estoppel and quasi estoppel based on the fact that NGP has asserted claims for indemnification and advancement from Agspring under the Services Agreement despite NGP's representations and warranties to Holdco in the MIPCA that no such claims exist. For the reasons stated below, Holdco's Motion to Amend is denied as to the addition of counts for equitable estoppel and quasi estoppel but granted as to the removal of claims and addition of facts regarding NGP's alleged fraud.

"Motions to amend a pleading are committed to the sound discretion of the judge."[38] Court of Chancery Rule 15(a) states that "leave shall be freely given when

---

which commands the defendant to do some positive act"). Because "[m]andatory injunctions should only issue with the confidence of findings made after a trial or on undisputed facts," mandatory injunctive relief is inappropriate on this ground as well since this case, for practical purposes, has not even left the starting gate. *C&J Energy Servs., Inc.*, 107 A.3d at 1053–54.

[38] *In re Estate of Childres*, 2020 WL 1659351, at *1 (Del. Ch. Mar. 25, 2020).

justice so requires,"[39] and our "[c]ourts have interpreted [Rule 15] to allow for liberal amendment in the interest of resolving cases on the merits."[40] "But 'leave to amend should not be granted where there is evidence of bad faith, undue delay, dilatory motive, undue prejudice or futility of amendment.'"[41] Where, as here, the Court is asked to evaluate futility, the Court is "required to take well-plead facts as true and draw all reasonable inferences in [the plaintiff's] favor."[42] A motion to amend should be denied on the basis of futility only if "the legal insufficiency of the amendment is obvious on its face."[43]

NGP opposes Holdco's motion to amend, arguing that the amendments are futile because "Holdco is precluded from relitigating issues of advancement and

---

[39] Ct. Ch. R. 15(a).

[40] *Gould v. Gould*, 2011 WL 141168, at *7 (Del. Ch. Jan. 7, 2011).

[41] *Apogee Invs., Inc. v. Summit Equities LLC*, 2017 WL 4269013, at *2 (Del. Ch. Sept. 22, 2017) (alteration omitted) (quoting *N.S.N. Int'l Indus., N.V. v. E.I. DuPont de Nemours & Co.*, 1994 WL 148271, at *8 (Del. Ch. Mar. 31, 1994)).

[42] *Id.*

[43] *NACCO Indus., Inc. v. Applica, Inc.*, 2008 WL 2082145, at *1 (Del. Ch. May 7, 2008).

arbitrability that have already been decided by the Panel."[44]  The arbitration panel

determined in Interim-Award 1 that "[t]he arbitration clauses in the 2012 Services

Agreement and the 2012 LLC Agreement survive and govern."[45]  Because the

clauses survive and govern, "they require[d] arbitration."[46]  The arbitration panel

then determined that "[t]he clear and unambiguous terms of the Services Agreement

entitle NGP to advancement from Agspring."[47]

In its proposed amended complaint, Agspring pleads that "NGP should be

enjoined and estopped from enforcing the terms of the 2012 Services Agreement to

obtain advancement or indemnity."[48]  But, as discussed above, I refuse to enjoin

enforcement of the arbitration panel's advancement award because to issue the

requested injunction would be to nullify the panel's award, and I have now

---

[44] NGP Omnibus Br. at 76–77.

[45] NGP Omnibus Br. Ex. 28 at 1.

[46] NGP Omnibus Br. Ex. 30 at 3.

[47] NGP Omnibus Br. Ex. 33 at 4.

[48] Agspring Am. Mot. Ex. B at 87–88.

confirmed that award in the Advancement Opinion. Thus, amending the complaint to add a request for an injunction-based estoppel would be futile.

I cannot say the same, however, with regard to the other two amendments proffered by Holdco. Removing the claims dismissed by the Memorandum Opinion makes perfect sense as a matter of good pleading hygiene. And I am not inclined to prevent Holdco from adding facts about the non-disclosure of the 2012 Agreements to its fraud claims. The arbitration panel held that the 2012 Agreements survive and govern, but it made no determination regarding NGP's alleged fraud. The fraud claims may or may not survive a pleading stage challenge down the road, but the challenge has yet to be mounted and the proffered amendments to the claims, at this stage, are not "insufficien[t] . . . on [their] face."[49]

NGP also opposes amendment by arguing that Holdco unduly delayed in bringing its motion to amend. Specifically, it argues that Holdco was aware of the so-called "additional facts" it wants to add as early as May 2019, but Holdco waited

---

[49] *NACCO Indus., Inc.*, 2008 WL 2082145, at *1.

nearly two years to add the allegations.[50]  In my view, there is no undue delay for two reasons.  First, Holdco proposes to add new allegations in support of an already existing claim and well before discovery or trial.  As such, there is no prejudice.[51] And second, Holdco did not know with certainty whether it would be threatened with alleged harm to its sole asset, Agspring, until the advancement award was in place.  Given this dynamic, Agspring did not unduly delay in seeking leave to file the proposed amendment.

For these reasons, the Motion to Amend is denied in part and granted in part.

### C. The Motion to Stay is Granted

"The decision to grant or to deny a stay is one that lies within the discretion of the trial court."[52]  A stay is appropriate "where the granting of a stay would not

---

[50] NGP Omnibus Br. at 79.

[51] *See Annone v. Kawasaki Motor Corp.*, 316 A.2d 209, 211 (Del. 1974) (explaining that prejudice must exist for the court to deny a motion to amend on grounds of delay).

[52] *LightLab Imaging, Inc. v. Axsun Techs., Inc.*, 2012 WL 1764225, at *1 (Del. Ch. May 10, 2012) (citing *Phillips Petroleum Co. v. Arco Alaska, Inc.*, 1983 WL 20283, at *4 (Del. Ch. Aug. 3, 1983)).

prejudice the non-moving party and where it would spare the moving party 'unnecessary expense or burden.'"[53]

NGP argues that "[i]t is inequitable and prejudicial to NGP to allow Plaintiffs to continue to prosecute their claims against NGP in the Sale Action while Agspring flouts its obligation to advance NGP's legal fees arising from this very lawsuit."[54] It points out that this Court has granted stays to prevent a party from "get[ting] to play offense when it wants to play offense, while gaining the advantage of not having to play defense."[55] It also argues that Agspring will not experience prejudice because this is a case for money damages, not time-sensitive injunctive relief.[56]

---

[53] *Id.* (citing *Weiss v. LeeWards Creative Crafts*, 1992 WL 65410, at *1 (Del. Ch. Mar. 1, 1992)).

[54] Def. NGP X US Hldgs., L.P.'s Mot. to Stay (D.I. 181) at 9.

[55] *LightLab Imaging, Inc.*, 2012 WL 1764225, at *2.

[56] *See Walker Digital, LLC v. Canon U.S.A. Inc.*, 2013 WL 12221415, at *1 n.1 (D. Del. Jan. 28, 2013) ("Where money damages will suffice to address a plaintiff's injury, the delay occasioned by a stay is less likely to result in undue prejudice."). Holdco argues that "Holdco *will be* prejudiced by a stay because *it is* seeking time-sensitive injunctive relief" in the form of its Motion for Preliminary Injunction. Agspring Holdco, HVS, LVS, and TOBI's Resp. to NGP's Mot. to Stay ("Holdco Stay Resp.") (D.I. 189) at 10. But, for reasons explained above, that motion has now been denied.

Holdco and Agspring both oppose NGP's Motion to Stay. Agspring argues that staying the claims against NGP worth hundreds of millions of dollars until Agspring "pays NGP's extraordinary legal bills will preclude Agspring's claim from being considered on the merits" because it is insolvent.[57] And in such circumstances, Delaware courts "balance the existence of advancement rights against the realities of insolvent entities."[58]

For its part, Holdco argues that there is no basis to stay the claims brought by Plaintiffs in this case because "Holdco and the Investor LLCs are not subject to any arbitration award and are not parties to any contract that would require those entities to advance fees to NGP."[59] They say that "NGP also cites no case in which a

---

[57] Pl. Agspring, LLC's Opp'n to NGP X Hldgs. L.P.'s Mot. to Stay ("Agspring Opp'n to Mot. to Stay") (D.I. 188) at 4. NGP disputes that Agspring is insolvent. *See* Tr. of Oral Argument (D.I. 221) 73:13–74:18; NGP Omnibus Br. at 70.

[58] Agspring Opp'n to Mot. to Stay at 4 (citing *Andrikopoulos v. Silicon Valley Innovation Co.*, 120 A.3d 19, 20 (Del. Ch. 2015)). NGP distinguishes *Andrikopoulos* in its reply brief because the company at issue there was in receivership, which Agspring is not. *See* Def. NGP X US Hldgs. L.P.'s Reply in Supp. of Mot. to Stay ("NGP Mot. to Stay Reply") (D.I. 208) at 8–9.

[59] Holdco Stay Resp. at 3.

Delaware court effectively dismisses, or even stays, claims by parties with no advancement obligations based on defendants' inability to obtain advancement from a different party."[60] According to Holdco, "[a] stay until Agspring pays NGP advancement will cause Holdco and the Investor LLCs the ultimate prejudice: dismissal of their claims without consideration on the merits."[61]

As to Agspring, the Motion to Stay must be granted. "[S]evere financial hardship . . . is not a legally cognizable defense to advancement."[62] Agspring's arguments are all premised on the fact that it cannot pay the advancement fees it has now been ordered to pay in a final, binding judgment.[63] On this record, at least,

---

[60] *Id.* at 9.

[61] *Id.*

[62] *Tafeen v. Homestore, Inc.*, 2004 WL 556733, at *10 (Del. Ch. Mar. 22, 2004), *aff'd Homestore, Inc. v. Tafeen*, 886 A.2d 502 (Del. 2005); *cf.* 1 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery*, § 9.02[j], 9-48 (2d ed. 2020) (noting that this court "has evidenced a reluctance to entertain a defense based upon the resulting financial hardship" to a corporation in the context of mandatory advancement for officers, directors or other agents of the corporation).

[63] In light of this reality, Agspring asks this Court to "balance the equities of advancement rights against the realities of insolvent entities." *See Andrikopoulos*, 120 A.3d at 20. As noted, NGP argues *Andrikopoulos* is distinguishable because it arises from the receivership context and does not override the general rule that inability to pay is not a

that is not enough to justify a ruling that requires NGP to defend itself on claims

asserted by Agspring while Agspring flouts its obligation to advance.[64]

Whether the stay should apply to Holdco is a thornier question. "[O]ur

corporation law is largely built on the idea that the separate legal existence of

corporate entities should be respected—even when those separate corporate entities

are under common ownership and control."[65]   The same is generally true of

---

justification for avoiding a binding, final advancement obligation.  Agspring also argues
that the policy reasons that animate awards of advancement as stated in the authorities
cited by NGP—to encourage capable directors to serve on corporate boards—is
inapplicable here.  Agspring Opp'n to Mot. to Stay at 4–5.  Even if true, Agspring's refusal
to honor its advancement obligations frustrates Delaware's strong commitment to
"enforce the contractual scheme that the parties have arrived at through their own self-
ordering." *Change Cap. P'rs Fund I, LLC v. Volt Elec. Sys., LLC*, 2018 WL 1635006,
at \*4 (Del. Super. Ct. Apr. 3, 2018).

[64] Other courts have held the same. *See, e.g.*, NGP Mot. to Stay Reply at 7–8; *Islet Scis.,
Inc. v. Brighthaven Ventures, LLC*, 2017 WL 3860500, at \*4 (N.C. Super. Ct. Aug. 29,
2017) ("[The party's] claimed inability to pay does not excuse its failure to provide the
Advancement."); *Orion Ethanol, Inc. v. Evans*, 2009 WL 2355274, at \*4 (D. Kan. July 29,
2009) ("As [the defendant] correctly points out in its brief, a legal obligation to advance
the funds is not negated by a lack of cash. [The plaintiff] provided no legal support for its
inadequate cash argument.").

[65] *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1038 (Del. Ch. 2006);
*see also Skouras v. Admiralty Enters., Inc.*, 386 A.2d 674, 681 (Del. Ch. 1978) ("Mere
control and even total ownership of one corporation by another is not sufficient to warrant
the disregard of a separate corporate entity.").

alternative entities like limited liability companies.[66]  This principle, however, is not absolute.[67]

With this backdrop in mind, in my view, there are several reasons to grant the Motion to Stay for now, even as to Holdco and notwithstanding its legal separateness, pending the outcome of further proceedings.  I explain them briefly below.

*First,* the Advancement Opinion will result in a final judgment in the companion litigation.  Agspring has expressed its intent to appeal that judgment.[68]

---

[66] *See, e.g.*, 6 *Del. C.* §18-303 ("[T]he debts, obligations and liabilities of a limited liability company . . . shall be solely the debts, obligations and liabilities of the limited liability company . . . ."); *Focus Fin. P'rs, LLC v. Holsopple*, 241 A.3d 784, 809 (Del. Ch. 2020) ("A Delaware LLC is a separate legal entity created through Delaware's sovereign power as a state.") (internal quotation marks omitted); *Wood v. U.S. Bank Nat'l Ass'n*, 246 A.3d 141, 148 (Del. Ch. 2021) ("The Delaware Uniform Limited Liability Act makes clear that an LLC has a separate juridical existence distinct from its members.").

[67] *See, e.g.*, *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021) ("[I]n exceptional cases, corporate veil-piercing is necessary and appropriate.") (internal quotation marks omitted); *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 667 (Del. Ch. 2012) ("Numerous legal rules and doctrines circumvent the general principles of corporate separateness and legal liability.").

[68] Pl.'s Opening Br. in Supp. of its Mot. for Summ. J., Declaratory J., and to Vacate the Arbitration Award (C.A. 2019-1021) (D.I. 62) at 3 ("The purpose of Agspring's motion is to present Agspring's arguments regarding its rights under the MIPCA in one place, ideally to obtain relief from this Court, but at a minimum, to resolve this case to final

Given that NGP's right to advancement is at the heart of the appeal and the Motion to Stay, it makes sense as a matter of case management to allow that issue to be resolved finally before tackling the difficult question of whether Holdco may litigate its claims against NGP while its wholly-owned subsidiary fails to honor its obligation to advance the fees and expenses NGP incurs as it defends those claims.[69]

*Second*, in my view, the parties have not fully developed the extent to which the advancement judgment might be binding upon Holdco.[70] That issue will need to be explored further following the resolution of the advancement appeal, but the

---

judgment such that Agspring can take an appeal."); *id.* at 12 ("Since the Court's ruling [denying Agspring's motion for a preliminary injunction enjoining the arbitration], Agspring has sought to reduce this matter to a final judgment so it can exercise its right to appeal under the Delaware Constitution.").

[69] *See K&K Screw Prods., LLC v. Emerick Cap. Invs., Inc.*, 2011 WL 3505354, at *11 (Del. Ch. Aug. 9, 2011) (observing that "[t]he Court of Chancery possesses the inherent power to manage its docket, including the discretion to stay case pending the resolution of [other litigation] on the basis of comity, efficiency, or common sense") (citation and internal quotation marks omitted). Obviously, if Agspring or Holdco elect not to appeal, then the stay can be revisited.

[70] I distinguish this question from the question of whether Holdco may litigate issues decided in the arbitration anew in this case under the doctrine of collateral estoppel—an issue already resolved in the discussion above. *See Greene v. Conn. Mut. Life Ins. Co.*, 1979 WL 174435, at *3 (Del. Ch. Sept. 19, 1979) (noting the "important distinctions" between collateral estoppel and res judicata).

issue should be resolved before NGP is required to defend claims that are subject to an adjudicated right to advancement.[71]

*Third*, the parties have not addressed the practical and perhaps substantive implications of staying the litigation of Agspring's claims while Holdco's claims proceed. Is Agspring a necessary party to Holdco's claims?[72] Relatedly, can Holdco's claims proceed to judgment without Agspring? If so, is it efficient to litigate Holdco's claims to judgment when there remains a possibility that the stay

---

[71] I note that there is some incongruency in Holdco's positions as advanced in the various motions. It seeks to enforce Agspring's rights in requesting injunctive relief under contracts to which it is not a party, yet it touts corporate separateness in resisting a stay based on the advancement judgment. Holdco and Agspring's counsel addressed this apparent inconsistency at oral argument by emphasizing that Holdco has separate contractual rights. Oral Argument Tr. at 30:24–31:16 ("The Court: [I]f I'm going to find that harm to you flows from harm to Agspring, then why would I not find that connection meaningful with respect to those rights that have been adjudicated thus far in these proceedings? It just seems a bit of a you want to be separate when you want to be, but you don't when you don't. [Counsel]: Well, I understand that, but I think the distinction here is that Holdco has a contract, a separate contract, with NGP . . . . Holdco is not a party to . . . the services agreement. And so I think it is consistent for Holdco to say, do not hold us accountable with respect to a contract to which we are not a party. However, NGP, you are a party to the MIPCA. We get to enforce the MIPCA."). But, as noted, strict contractual privity is not required for preclusion purposes.

[72] *See* Ct. Ch. R. 19(b).

of Agspring's claims will be vacated down the road? These questions may need to be addressed following the outcome of the advancement appeal.

*Finally*, it may be necessary to conduct targeted discovery on the questions related to corporate separateness before deciding whether the advancement judgment should affect Holdco's ability to prosecute its claims while Agspring's advancement obligation remains unsatisfied. Again, this issue will need to be revisited upon the conclusion of the advancement appeal.

Until the advancement appeal is concluded, and as long as the advancement judgment remains unsatisfied, I am satisfied that a stay of this litigation is appropriate to prevent NGP from incurring potentially "unnecessary expense or burden."[73] Of course, any party may seek relief from the stay for good cause shown.

### III. CONCLUSION

For the foregoing reasons, the Motion for Preliminary Injunction is DENIED, the Motion to Amend is GRANTED IN PART and DENIED IN PART and the Motion to Stay is GRANTED.

---

[73] *Weiss*, 1992 WL 65410, at *1.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*